ROSS (CREDITOR), vs. ROSS (ADMINISTRATOR).

1. A claim against an estate regularly declared insolvent, which has been filed in due time with the clerk, having been taken from the office for a special purpose with the permission of the Judge of Probate, and not having been returned through inadvertence, does not lose its place as a claim filed in time, because it cannot be found in the office on the last day allowed by law for filing written objections to claims which had been filed against the estate.

2. In contests under the statute (Clay's Dig. 194), between the creditors of an insolvent estate, it is a proper practice for the creditor, against whose claim an objection in writing has been filed, to declare upon it, as in a suit at common law, against the administrator de bonis non (defending in behalf of the ob-

7

jecting creditor), as defendant; and the declaration is not demurrable because the creditor, as plaintiff, *declares against himself*, as administrator *de bonis non*, as defendant.

3. An admission that the debt is *then due*, or that a liability *then exists*, will remove the bar of the statute of limitations, and revive the cause of action. Such an admission includes, not only an acknowledgment of the correctness or justice of the demand, but also a willingness to pay it.

4. The implied promise to pay, arising from such an admission, is as effectual to remove the bar of the statute of limitations and revive the debt, as an express promise.

5. A charge which asserts, "that it requires an express promise, or something equivalent to an express promise, to revive the original cause of action after the statute has effected a bar," is erroneous; because it admits of two constructions, one of which asserts an incorrect legal proposition.

6. It is not the duty of the court to modify or give precision to a charge requested by counsel; but a charge may be properly refused, if it admits of two constructions, one of which asserts an incorrect legal proposition.

ERROR to the Probate Court of Randolph.

It appears from the record, that the estate of Andrew Burnham, deceased, had been duly declared insolvent by the Orphans' Court of Randolph, in December, 1849, and that Frederick Ross was afterwards appointed administrator *de bonis non*.

On the 9th day of September, 1851, which was the last day allowed by law for filing objections in writing to the allowance of any claim against the estate, James S. Pearson, a creditor of the estate, presented himself at the office of the Probate Judge, and demanded an inspection of the claims on file against the estate, that had been filed pursuant to law, within six months from the time when the estate was declared insolvent, in order to present written objections to certain claims filed, or supposed to be filed, by Frederick Ross. Upon examination, no such claims were to be found on file, and Pearson then objected in writing to the reception of any such claims subsequently, as claims filed in time. The facts were these: Ross had filed his claims against the estate of Burnham, of which he was *administrator de bonis non*, in due time, but by permission of the Judge of Probate, he withdrew them for a certain purpose, and by mistake took away the claims themselves and the affidavits by which they were described and verified, which were intended to be left in the office; and by inadvertence, none of the papers were return-

ed to the office until after the objection was taken, as afore-said, to their being considered as filed. At the same time that the objection aforesaid was made, Pearson also filed his objection in writing, to the allowance of these claims of Ross, reserving as far as he could his previous objection.

The court decided that the claims should be considered as claims properly filed, and required the creditor to proceed to contest them upon the merits, to which he excepted.

The cause then proceeded, as upon a declaration regularly filed by the claimant Ross, upon his demands against himself as *administrator de bonis*, (defending in behalf of Pearson, the contesting creditor). To this there was a demurrer, which was overruled.

The parties then went to trial, as on issue joined. In the course of the trial, a witness for Ross the claimant, after re-lating some previous conversation between Ross and Burn-ham, testified as follows: Ross said, "Doctor, there are some notes and accounts between you and me, from the year 1840, that are probably out of date, and I am willing to ac-knowledge them all in date, if you are." Dr. Burnham re-plied: "Yes, I always expected to do so." This was a few days before the death of Burnham. The same witness testi-fied, that in May, 1848, and previous to the conversation last mentioned, Burnham admitted to him that he was indebted to Ross, and that he had borrowed some $200 as many as four times from him. The claim declared upon was a note from Burnham to Ross for $200 for cash loaned, bearing date 7th January, 1841, payable ten days after date, with in-terest from date.

The court charged the jury who tried the issue :

1. That any expression which amounted to an admission that the debt was due, or that the liability existed at the time, took the case out of the statute of limitations, and revived the original cause of action.

2. That such an acknowledgment is an implied promise to pay, and is equivalent to an express promise to pay, and it has the same effect whether it is made to the creditor or to another person, or whether it is made before or after the time at which the statute would create a bar to the action.

The counsel for the contesting creditor requested the court

to charge the jury: That an acknowledgment of the justness of a debt would only postpone the bar of the statute six years longer, but that it took an express promise, or something equivalent to an express promise, to revive the original cause of action after the statute had effected a bar. This the court refused.

Overruling the objection of plaintiff in error, to receiving the claim as one properly filed;

Overruling his demurrer to the statements or declaration;

And the charges given and the refusal to charge as aforesaid, are severally assigned as error.

FALKNER, for plaintiff in error.

1. The demurrer to the declaration should have been sustained, because a party cannot sue himself in any case.

2. The charges of the court, as to the statute of limitations, are erroneous.—Dey's Ex'rs v. Jones' Ex'rs, 19 Wend. 491; Lowther et. al. v. Chappel, 8 Ala. Rep. 353, and authorities cited; Lyon et al. v. Bank, 12 ib. 508.

HEFLIN, contra:

1. The rights of the creditor were not prejudiced, by the temporary withdrawal of his claim from the office with the permission of the judge.—Rutherford's Adm'r v. Branch Bank at Mobile, 14 Ala. Rep. 92. Nor was the contesting creditor injured by the withdrawal, for he filed his written objection to it, and had an issue submitted to a jury to try the validity of the claim.

2. In actions on contracts, any expression which amounts to an admission that the debt is then due, or that a liability then exists, will take the case out of the statute of limitations, and revive the cause of action.—4 Porter, 223; 10 Ala. Rep. 959; 4 Johns. R. 468; 6 ib. 268; 11 ib. 147; 15 ib. 519; 2 Starkie on Ev. 661 (top page); 4 Phil. Ev. 138; 2 Green on Ev. § 436.

PHELAN, J.—The objection to the claim of Ross, because it was not on file at the time Pearson called to examine it, was properly overruled. The claim had been regularly filed, supported by affidavit, but the Probate Judge had given permission to Ross to withdraw the claim. By mistake both note

and affidavit were taken from the office. The claim having been once regularly filed in time, secured to it all the advantage that the law gives to that act. It was the duty of the judge, to have kept a list or docket of claims for the inspection of the creditors, but if he does not do so, and permits a claim to be withdrawn temporarily for a particular purpose, the claim will not lose its place as one on file. It is moreover plain, that no injury was done, for Pearson filed his objection to the allowance of this claim, although it was not on file.

The demurrer to the declaration was also properly overruled. It is based upon the idea that a man cannot sue himself. That may be true upon general principles, but the answer to the objection is, that in this case the statute authorizes and directs that this very thing shall be done, and there was indeed no better course to be devised to regulate the contests in the Probate Court between conflicting creditors. The imposition of costs is placed fully under the discretion of the Probate Judge. The statute relating to this subject is in these words: "The court shall cause an issue to be made up between such claimant as plaintiff, and the administrator, or the contesting creditor *in the name of the administrator*, as defendant, by pleading thereon in the same manner as if the claimant had sued the administrator at common law."—Clay's Dig. 194, § 11.

This brings us to the consideration of the charges of the court.

The court below charged the jury: That any expression which amounted to an admission that the debt was due, or that the liability existed at the time, took the case out of the statute of limitations, and revived the original cause of action.

And further: That such an acknowledgment is an implied promise to pay, and is equivalent to an express promise to pay; and it has the same effect, whether it is made to the creditor or to another person, or whether it is made before or after the time at which the statute would create a bar to the action.

In this case it will be observed, that the bar of the statue was complete at the time of the conversation with Burnham, so that a part of the last charge is abstract.

We have held in a case decided at the present term, Townes & Nooe, Ex'rs v. Ferguson, that when the bar of the statute of limitations is complete, it is necessary to remove that bar that there should be, not only a subsequent acknowledgment of the *correctness* of the plaintiff's demand, but also a manifestation of *willingness* to pay it. In this we have but followed the current of the later decisions on this much disputed question.—Angell on Lim. 247 to 250, and authorities cited; Greenl. Ev. § 40; Lowther *et al.* v. Chappell, 8 Ala. Rep. 353, and authorities cited.

We did not, by that decision, mean to be understood as saying that nothing but an *express promise to pay* would suffice; because, if that had been our intention, it would have required but a few plain words to put that intention beyond the reach of doubt or controversy. We meant no more than to adopt and follow the doctrine which is declared by Mr. Greenleaf on a review of all the cases, to be the "general doctrine now well established," and which he lays down in these words; " That the acknowledgment must not only go to the *original justice* of the claim, but it must admit that it is *still due.*"

It is not perceived that the instructions given to the jury conflict with this doctrine. If the admission was that the *debt was due* at the *time of the admission,* or, what is the same thing in other words, that it was a *liability* which *existed* at *that time,* it brought the case within the rule laid down by Greenleaf, and adopted by this court in the case of Townes & Nooe v. Ferguson ; and the first charge was correct.

The correctness of the second charge, the main and most important feature of which is, that such an acknowledgment—that is, of a *subsisting debt or liability*—is an *implied promise* to pay, and as such, is just as effectual as an *express promise* to take the case out of the statute, follows as a necessary consequence of the first.

The charge refused is in these words: " That an acknowledgment of the justness of the debt would only postpone the bar of the statute of limitations six years longer, but that it took an *express promise,* or something *equivalent to an express promise,* to revive the original cause of action after the statute had effected a bar."

To a mind unaccustomed to the precision so very necessary generally to correct decisions in questions of law, there may not appear, at the first glance, any good reason why, if the charges given are correct, it would not be proper to give the charge that was asked. In one light, and upon one construction, that charge is correct, and upon another it is incorrect; and as it admits of two constructions, one of which was calculated to confuse and mislead the jury, and as no explanation or qualification was given by the party asking it, the court properly refused it.    When this charge affirms, "That it took an express promise, or something equivalent to an express promise, to revive, &c.," if it is to be construed as signifying that it took an express promise, or something *equivalent* to an express promise *in law* to revive, &c., it was correct.    That was what the court had just declared.    But if it is to be construed as signifying, that it took an express promise, or something *equivalent* to an express promise *in terms*, it is incorrect.    The two, though generally equivalent *in law*, as the foundation of an action, are in no other respects equal or equivalent; not in the terms which create them, at any rate, for here they are strictly opposites, as the words "*express*" and "*implied*," of themselves import: these are antagonistic terms.    To say, then, in a charge to a jury in this case, that it took an express promise, or something *equivalent* to an express promise, without more, without noticing in any manner this distinction, was calculated to mislead, and as it was not the duty of the court to modify or give precision to the charge, as asked, it was properly refused.—See Morrison v. Wright, 7 Por. 67; Carmichael v. Brooks, 9 Por. 330.

We find no error in the record, and the judgment below is affirmed.